### UNITED STATES v. PLISCO et al.
### No. 59982.

District Court of the United States for the District of Columbia.

Feb. 11, 1938.

David A. Pine, Acting U. S. Atty., and Roger Robb and John W. Fihelly, Asst. U. S. Attys., all of Washington, D. C.

James A. O'Shea, William A. Gallagher, Harry T. Whelan, William B. O'Connell, Irvin Goldstein, and William H. McGrath, all of Washington, D. C., for defendants.

COX, Justice.

The indictment charges a conspiracy of thirty-two defendants to violate the law relating to gambling in the District of Columbia. D.C.Code, § 863 as amended, and § 865, D.C.Code 1929, T. 6, §§ 151, 153.

Motions have been filed by four of the defendants, Plisco, Morganstein, Cahill, and Floratos, to quash certain search warrants and to suppress the evidence seized thereunder upon the ground, among others, that material evidence upon which these warrants were issued appears to have been obtained by police officers by means of tapping wires and intercepting messages passing within the District of Columbia to or from the defendants.

It is conceded by counsel for the United States that without the evidence as to the intercepted messages the remaining evidence is not sufficient to sustain the search warrants or the indictment.

Defendants rely upon Nardone v. United States, 58 S.Ct. 275, 82 L.Ed. ——, decided December 20, 1937, by the Supreme Court of the United States. In that case the question stated for decision and answered in the negative is, "whether, in view of the provisions of section 605 of the Communications Act of 1934, Ch. 652, 48 Stat. 1064, 1103; U.S.C. Tit. 47, § 605 (47 U.S.C.A. § 605), evidence procured by a federal officer's tapping telephone wires and intercepting messages is admissible in a criminal trial in a United States District Court."

Clearly, the terms of the question as thus stated are broad enough to include the question now presented. The facts of the two cases differ, however, in that the intercepted messages involved in the Nardone Case were interstate messages, while here we have to deal with local messages only. Counsel for the government argue that this difference distinguishes the present case because, as they contend, the Communications Act, as amended, 47 U.S.C.A. § 151 et seq., is concerned with interstate and not with local or intrastate communications; and that in view of the rule recognized and applied in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376, followed in Beard v. United States, 65 App.D.C. 231, 235, 82 F.2d 837, and Smith v. United States, 67 App.D.C. 251, 91 F.2d 556, 557, the language of the Nardone decision ought to be confined to interstate messages only and the rule recognized in the Olmstead Case left in force and effect as to local messages.

In the Olmstead Case it was held that the Fourth and Fifth Amendments to the Constitution do not protect a citizen against interception of his telephone messages by wire tapping or their use in evidence against him. The court there approved the common-law rule that admissibility of evidence is not affected by the illegality of the means by which it is obtained, subject to the established exception that excludes all evidence in the procuring of which government officials have invaded the right of privacy protected by the Fourth and Fifth Amendments. The court expressly recognized the authority of Congress to protect the secrecy of telephone messages by making them, when intercepted, inadmissible in evidence in federal cases, but declined to extend the established exception to the common-law rule to cover intercepted telephone messages "without the sanction of congressional enactment." The acts of the officers and the approval

and adoption thereof by the government, challenged as immoral and wrongful in the minority opinions, were excused or justified as means to the end of detecting and convicting criminals.

The Communications Act, passed since the Olmstead decision, expressly provides in section 605, 47 U.S.C.A. § 605, that "no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."

On its face the Nardone decision, passing over the constitutional question considered in the Olmstead Case, accepts the broad language of this provision as direction to exclude evidence obtained through interception of telephone messages by wire tapping, in effect approving the further exception to the common-law rule which the court in the Olmstead Case refused to recognize without legislative sanction. The court treats the provision of section 605 as remedial; the purpose being to eliminate a practice considered by many to involve "a grave wrong." The construction applicable to "general words of a statute intended to prevent injury and wrong" is adopted, and the provision construed according to its tenor to prohibit even government officers from giving the proscribed evidence. Thus a policy excluding evidence of intercepted messages is held to be established by section 605 and is apparently accepted in lieu of the policy admitting such evidence previously approved by the court in the Olmstead Case.

The legislative power of Congress is of course plenary as to the District of Columbia as well as to interstate commerce. If it so desired, Congress doubtless could establish two rules for the District Court of the United States for the District of Columbia with respect to admissibility in evidence of intercepted telephone messages; one for interstate messages and another for local messages. But nothing is found in the opinion of the court or in the dissenting opinion to suggest attributing such meaning or consequence to section 605. The question stated for decision, the importance of which is expressly recognized, is not confined to intercepted interstate messages but applies to intercepted messages generally. The ethical considerations that support the policy of excluding intercepted interstate messages in the District of Columbia would seem to apply with equal force to intercepted local messages. The ancient maxim of construction, translated as, "Like reason makes like law" or "When the reason is the same the law is the same," is classified as one of the law's "Rules of Logic." Broom's Legal Maxims, p. 135; 65 C. J. 1188. It is not to be assumed that Congress intended diverse and hostile rules for like situations. Rational, consistent procedure is vital to the administration of the law. And a legislative regulation of procedure under certain conditions or as to part of a class should be accepted by the courts, in the absence of clear contrary intention, as establishing the policy to be applied under like conditions or to all of the class. Broom's Legal Maxims, pp. 156, 157. In reply to the argument that it is improbable section 605 was intended to hamper the activities of federal officers in detecting and punishing crime, the Supreme Court observes: "The answer is that the question is one of policy. Congress may have thought it less important that some offenders should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty. The same considerations [elaborated in Olmstead v. U. S., 277 U.S. 438, 475–485, 48 S.Ct. 564, 571–575, 72 L.Ed. 944, 66 A.L.R. 376] may well have moved the Congress to adopt section 605 as evoked the guaranty against practices and procedures violative of privacy, embodied in the Fourth and Fifth Amendments of the Constitution."

The Nardone decision purports to declare the rule as to admissibility in evidence of intercepted messages "in view of the provisions of section 605 of the Communications Act [47 U.S.C.A. § 605]." It plainly denies that "evidence procured by [even] a federal officer's tapping telephone wires and intercepting messages is admissible in a criminal trial in a United States District Court." No satisfactory reason appears for holding the point decided to be narrower in scope than the question stated by the court for decision or for placing local messages intercepted in the District of Columbia on a basis of admissibility in evidence different from that of intercepted interstate messages.

The motions of the defendants are granted.